IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Phillip Douglas Jacobs,       :
et al.,
                              :
         Plaintiffs,              Case No. 2:08-cv-713
                              :
   v.                             JUDGE MARBLEY
                              :
Ohio Department of
Rehabilitation and Correction, :

         Defendants.          :

ORDER AND REPORT AND RECOMMENDATION

    Plaintiff, Phillip Douglas Jacobs, a state prisoner, filed this civil action against various defendants under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961-1968, and 42 U.S.C. §1983. The defendants include Ted Strickland, Governor of the State of Ohio, the Ohio Department of Rehabilitation and Correction, Terry Collins, the director of ODRC, Tracy Reveal, the superintendent of the Corrections Training Academy (the "State Defendants"), Keefe Commissary-Network (Access Securepak) and certain officers and employees of that entity (the "Keefe Defendants"), the board of directors of the Ohio Civil Service Employees Association, and the United States Department of Justice, National Institute of Corrections. The State Defendants and the Keefe Defendants have each moved to dismiss the complaint for failure to state a claim upon which relief can be granted. For the following reasons, the Court will recommend that the motions to dismiss be granted.

I.

    A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a

claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. <u>Roth Steel Products v. Sharon Steel Corp.</u>, 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. <u>See Rauch v. Day & Night Mfg. Corp.</u>, 576 F.2d 857, 858 (6th Cir. 1976). Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, <u>Federal Practice and Procedure</u> § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. <u>Id</u>.

On the other hand, more than bare assertions of legal conclusions is required to satisfy the notice pleading standard. <u>Scheid v. Fanny Farmer Candy Shops, Inc.</u>, 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under <u>some</u> viable legal theory." <u>Id</u>. (emphasis in original, quotes omitted).

> [w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

2

Id. It is with these standards in mind that the motions to dismiss will be decided.

## II.

The named plaintiffs consist of prisoners currently incarcerated at the North Central Correctional Institution ("NCCI"), together with certain family and friends, all of whom are alleged to have an interest in the outcome of this litigation. The only individual who has signed the complaint, however, is Mr. Jacobs. Although 28 U.S.C. §1654 allows parties to plead and conduct their own cases either personally or through an attorney, "that statute does not permit plaintiffs to appear *pro se* where interests other than their own are at stake." Shepherd v. Wellman, 313 F.3d 963, 970 (6th Cir. 2003)(internal citations omitted). Accordingly, a litigant who desires to proceed *pro se* must personally sign the complaint to bring his or her claims before the court. See Koger v. Hudson, No. 1:07 CV 3438, 2008 WL 495619 at *1 (N.D. Ohio Feb. 21, 2008). Because none of the alleged family members and friends and none of the other prisoners at NCCI have signed the complaint, Mr. Jacobs is the only plaintiff properly before the Court.

Mr. Jacobs further alleges that he "files this suit on behalf of all others similarly situated and having similar interests." Complaint, p. 2. *Pro se* prisoners, however, may not serve as class representatives. See Palasty v. Hawk, 15 Fed.App'x 197, 200 (6th Cir. 2001). Further, without a request for class certification under Fed.R.Civ.P. 23, a plaintiff's claims are restricted to alleged violations of his own rights. See Edwards v. Timmerman-Cooper, No. 2:07-CV-1227, 2009 WL 1047111 at *5 (S.D. Ohio Apr. 17, 2009); see also Mercer v. Fayette Circuit Court, 52 F.3d 325 (table), 1995 WL 222181 at *1 (6th Cir. Apr. 13, 1995)(plaintiff lacked standing to assert RICO

3

claims on behalf of other children whose mothers were incarcerated). Because Mr. Jacobs has not filed a request for class certification and may not, in any event, proceed as a class representative *pro se*, the sole claims properly before this Court are limited to the defendants' alleged violations of his rights.

III.

Mr. Jacobs alleges that the State Defendants maintain special response teams and special tactical response teams in each Ohio correctional facility in furtherance of a conspiracy and pattern of racketeering activities which date back to 1994. These teams periodically conduct raids and "shakedowns" in which they confiscate, abuse, or destroy prisoners' personal property. According to the complaint, these unlawful activities do not serve any penological purpose, but are designed to stimulate a thriving market for the reordering of goods by the prisoners. The only available source for these goods is Access Securepak, the institutions themselves, and the prisoners' families and friends. The State Defendants and the Keefe Defendants have allegedly conspired to allow Access Securepak to be the principal market holder in exchange for a share in the price-fixing and price-gouging of that entity. The alleged role of OCSEA and its local union affiliate in this RICO conspiracy is to offer support and protection to its members who comprise the special response teams, despite having received reports of the teams' unlawful activities.

One such "shakedown" allegedly took place at NCCI on May 20, 2008. Mr. Jacobs complains that during this raid, various materials associated with his Sunni Muslim religion were strewn about his cell and that the members of the team poured milk all over his Holy Qu'ran, both inside and out. As the result of this conduct, Mr. Jacobs "suffered actual injury, intentional infliction of emotional distress, fear, aggravation, humiliation,

4

oppression, duress, denial of feelings of just treatment, intimidation, interference with personal rights and interference with economic expectations." Complaint, p. 7.

                                IV.

The Court will first consider the argument that Mr. Jacobs's claims against ODRC and the other State Defendants in their official capacities are barred by the Eleventh Amendment. This constitutional amendment prohibits a citizen of a state from suing that state, or one of its agencies, in federal court absent consent to such suit or an express statutory waiver of immunity. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984). It is uncontested that the State of Ohio has not consented to suit in federal court. Further, the enactment of RICO did not act as an express statutory waiver of the States' immunity. See Akbar-El v. Ohio Dept. of Corrections, 124 F.3d 196 (table), 1997 WL 579160 at *1 (6th Cir. Sep. 17, 1997). Accordingly, the Eleventh Amendment bars the prosecution of Mr. Jacobs's RICO claim for money damages against ODRC and the remaining State Defendants in their official capacities. Id.

Regarding the alleged constitutional violations, the proper vehicle for raising such claims is 42 U.S.C. §1983. That statute authorizes a party who has been deprived of a federal right by a person acting under color of state law to seek relief. See, e.g., City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). As to a claim for monetary damages, however, "neither the State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Therefore, neither ODRC nor the other State Defendants, to the extent they acted in their official capacities, are liable for damages resulting from their alleged violation of Mr. Jacobs' constitutional rights.

V.

The State Defendants apparently concede that they may be liable in their individual capacities for damages under §1983, but only to the extent that they directly participated in the claimed violations. The State Defendants argue that in this case Mr. Jacobs has not alleged that they had any direct involvement in the alleged constitutional violations at NCCI. For this reason, the State Defendants contend that Mr. Jacobs fails to state a claim against them in their individual capacities under §1983. The Keefe Defendants advance a similar argument.

Allegations of direct involvement in constitutional deprivations, rather than attempts to impose liability by virtue of the doctrine of *respondeat superior*, are necessary in order to hold an individual defendant liable under §1983. Monell v. Department of Social Services, 436 U.S. 658 (1978). Although there are other legal claims that can properly be asserted against a supervisor simply because someone under his or her supervision may have committed a legal wrong, liability for constitutional deprivations under 42 U.S.C. §1983 cannot rest on such a claim. Consequently, unless the plaintiff's complaint affirmatively pleads the personal involvement of a defendant in the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that defendant and dismissal is warranted. See also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). This rule holds true even if the supervisor has actual knowledge of the constitutional violation as long as the supervisor did not actually participate in or encourage the wrongful behavior. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials cannot be held liable under §1983 for failing to respond to grievances which alert them of unconstitutional actions); see also Stewart v. Taft, 235 F.Supp.2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under §1983 cannot attach where the allegation of

liability is based upon a mere failure to act").

The only arguable constitutional violation alleged by Mr. Jacobs is a claim that his religious materials, including his personal copy of the Qu'ran, were vandalized and mutilated by the "Men in Black" during a shakedown.  None of the members of that alleged group is a defendant in this case.  Moreover, Mr. Jacobs does not maintain that any of the State Defendants or the Keefe Defendants, to the extent they were acting under color of state law, participated in or encouraged this wrongful behavior. Accordingly, his complaint fails to state a claim under §1983 upon which relief can be granted against either the State Defendants, in their individual capacities, or the Keefe Defendants.

VI.

The State Defendants and the Keefe Defendants argue that Mr. Jacobs's conspiracy claims are legally insufficient given the vague and conclusory allegations set forth in the complaint.  The State Defendants contend that the complaint lacks even the most basic information, such as which particular defendant did what in furtherance of any conspiracy.  The Keefe Defendants similarly maintain that the complaint fails to provide a factual basis for any meeting of the minds among the various parties.

It has been uniformly held that in order for a §1983 claim of conspiracy to survive a motion to dismiss, the pleading which sets forth that claim must do so in specific fashion.  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under §1983."  Guiterrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987).  The complaint in question must "allege specific facts showing agreement and concerted actions among the defendants...."  Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir.

7

1989). The failure to allege all elements of a conspiracy, including an agreement or a meeting of the minds among the alleged conspirators, and overt actions in furtherance of the conspiracy, requires dismissal of the complaint. <u>Woodrum v. Woodward County</u>, 866 F.2d 1121, 1126 (9th Cir. 1989); <u>Gometz v. Culwell</u>, 850 F.2d 461, 464 (8th Cir. 1988); <u>McGillicuddy v. Clements</u>, 746 F.2d 76, 77 (1st Cir. 1984).

The Court, having reviewed the allegations set forth in the complaint, concludes that Mr. Jacobs has not pled a §1983 conspiracy with any degree of specificity. Much, if not all, of the complaint is comprised of a formulaic recitation of the elements of a civil RICO claim. There are no factual allegations demonstrating that any of the defendants arrived at a meeting of the minds or engaged in any acts with the purpose of depriving Mr. Jacobs of a federal constitutional right. Accordingly, Mr. Jacobs has failed to state a claim of conspiracy under §1983 upon which relief can be granted.

VII.

Mr. Jacobs brings his civil RICO claim pursuant to 18 U.S.C. §1962(c). <u>See</u> Complaint, ¶1. This statute makes it "unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of the enterprise's affairs through a pattern of racketeering activity ...." To establish a violation of §1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985). In addition, a plaintiff asserting such a claim must show an injury to his business or property in order to obtain relief. <u>See</u> <u>Lee v. Michigan Parole Bd.</u>, 104 Fed.App'x 490, 493 (6th Cir. 2004) (citing 18 U.S.C. §1964(c)). Recovery for physical injury or mental suffering is not permitted under civil RICO because these types of harm do not concern business or property. <u>See</u>

8

Fleischhauer v. Feltner, 877 F.2d 1290, 1300 (6th Cir. 1986).

Even if Mr. Jacobs' complaint satisfied the pleading requirements of a civil RICO claim under Fed.R.Civ.P. 8(a), which is unlikely given the Supreme Court's recent decision in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the damages he claims to have suffered (emotional distress, fear, aggravation, humiliation, oppression, duress, feelings of unjust treatment, and intimidation) are precisely the sort of damages that are not recoverable under civil RICO because they do not involve his business or property. For this reason, Mr. Jacobs has failed to state a claim under civil RICO upon which relief can be granted.

VIII.

Mr. Jacobs also has filed a motion *instanter* to consolidate and/or for prospective injunctive relief or for restraining order (#20); a motion in consolidation and for sanctions (#35); and a motion *instanter* for preliminary injunction against defendant Collins or alternatively for appointment of counsel (#37). Although it is unclear what Mr. Jacobs is seeking by way of consolidation, the Court will treat that aspect of his motion as a request to consolidate this case with case no. 2:08-CV-680.

Consolidation of cases is provided for in Fed.R.Civ.P. 42(a), which provides, in pertinent part, that the Court may order consolidation of "actions involving a common question of law or fact...." The underlying purpose of the Rule is to promote economy in the administration of justice. Feldman v. Hanley, 49 F.R.D. 48 (S.D.N.Y. 1969). Any savings of litigant and judicial resources achieved by consolidation must be balanced against any prejudice to the parties, including potential confusion of the issues, which might result from consolidation. Arroyo v. Chardon, 90 F.R.D. 603 (D.P.R. 1981). It is not a prerequisite to consolidation that there be a complete identity of legal and factual issues posed in the cases which are the subject of the request. Thayer v. Shearson, Loeb, Rhoades, Inc.,

99 F.R.D. 522 (W.D.N.Y. 1983). Rather, as long as there are some common questions of either law or fact, the Court has the flexibility under Rule 42 to allow cases to proceed jointly with respect to such matters in which joint proceedings would not be unduly prejudicial and would be an effective utilization of judicial resources. Brewer v. Republic Steel Corp., 64 F.R.D. 591 (N.D. Ohio 1974), aff'd 513 F.2d 1222 (6th Cir. 1975).

A review of the two cases reveals that they do not involve common questions of law and fact. The present case is a civil RICO case. Case no. 2:08-CV-680 implicates RLUIPA, the free exercise clause, and the equal protection clause. The only "fact" that the two cases share in common is the charge that prison officials poured milk over the Holy Qu'ran. In this case, however, the alleged conduct was in furtherance of a pattern of racketeering, while in case no. 2:08-CV-680, the same conduct was allegedly part of an effort to discriminate against Sunni Muslims. The only other similarity is the fact that Mr. Jacobs is the plaintiff in each of the cases and Ted Strickland, ODRC, and Terry Collins are defendants. Given the many dissimilarities, the Court concludes that consolidation of the two cases would not be an effective utilization of judicial resources. Accordingly, Mr. Jacobs' request to consolidate is denied.

The Court also denies Mr. Jacobs' motion for sanctions as there is no basis for such an award in either law or fact. Mr. Jacobs' request is based on the stress he supposedly suffered as a result of the Keefe Defendants' alleged failure to make an appearance and respond to his complaint. The docket reflects that the Keefe defendants, in fact, filed a timely answer. Had they not done so, however, the only relief to which Mr. Jacobs might have been entitled would have been a judgment by default. The fact that he was not so entitled is further demonstrated by the Clerk's refusal to enter the default requested by Mr. Jacobs

on January 13, 2009.

In his motion for prospective injunctive relief or for restraining order, Mr. Jacobs alleges that defendant Collins and others under his supervision retaliated against him on account of his religious beliefs as a Sunni Muslim.  It is clear that the relief requested here is more appropriately the subject of Mr. Jacobs's action in case no. 2:08-CV-680.  In light of the Court's concomitant denial of his motion to consolidate the two cases, it is recommended that the motion for prospective injunctive relief or for restraining order (#20) be denied.

In his more recent motion for preliminary injunctive relief against defendant Collins, Mr. Jacobs states that he is being denied access to the courts as a result of unwarranted institutional transfers and lack of meaningful time in the prison law library.  It is unclear from the motion, however, what injunctive relief he is actually seeking.

To state a claim for denial of access to courts, a prisoner must show that he was actually hindered in pursuing a legal claim.  See Lewis v. Casey, 518 U.S. 343, 351 (1996).  Because Mr. Jacobs has not alleged that he suffered legal prejudice due to his transfers or lack of resources, and the record is devoid of any such prejudice, the Court recommends that his motion for preliminary injunctive relief against defendant Collins (#37) be denied.

Mr. Jacobs requests alternatively that he be appointed counsel.  This Court previously denied a motion for appointment of counsel on October 23, 2008, on the basis that this case had not progressed to the point that the Court was able to evaluate the merits of plaintiff's claim.  Now that the Court has determined that the claims against the State Defendants and the Keefe Defendants should be dismissed, there is even less reason to grant Mr. Jacobs's request.  Accordingly, the motion for

appointment of counsel is denied.

## IX.

Based on the foregoing reasons, the Court denies the motion for consolidation and for sanctions (#35) and the motion for appointment of counsel. It is recommended that the motion to dismiss filed by defendants Ted Strickland, Ohio Department of Rehabilitation and Correction, Terry J. Collins, and Tracy Reveal (#26) and the amended motion to dismiss filed by defendants Keefe Commissary-Network (Access Securepak), John Pricell, Bill Bosco, Steve Sawin, and Tim Nichols (#17) be granted. It is further recommended that plaintiff's motion for prospective injunctive relief or for restraining order (#20) and plaintiff's motion for preliminary injunction against defendant Collins (#37) be denied.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. Section 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140

(1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                        <u>/s/ Terence P. Kemp</u>
                                        United States Magistrate Judge